# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ROBERT EUGENE ALLEN                                       CIVIL ACTION

VERSUS                                                      NO. 17-4091

ST. TAMMANY PARISH, ET AL.                            SECTION: "I"(1)

## REPORT AND RECOMMENDATION

Plaintiff, Robert Eugene Allen, a state pretrial detainee, filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983 against St. Tammany Parish, the St. Tammany Parish Jail, the St. Tammany Parish Sheriff Board of Supervisors, and St. Tammany Parish Sheriff Randy Smith.  In this lawsuit, plaintiff challenged various conditions of his former confinement in the St. Tammany Parish Jail.[1]

To better understand the factual bases of plaintiff's claims, the Court held a Spears hearing on July 31, 2017.  See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement.  Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).  Spears hearing testimony becomes a part of the total filing by the *pro se* applicant.  Id.

Based on plaintiff's complaint and Spears hearing testimony, the Court finds that he is making the following allegations in this lawsuit:

---

[1] Plaintiff is currently incarcerated at the Greene County Justice Center in Springfield, Missouri.  Rec. Doc. 17.

Plaintiff was arrested on February 27, 2017, and detained in various holding cells at the St. Tammany Parish Jail with approximately twenty-eight other inmates for fifteen days.[2]  He alleged that this was improper, in that it violated the minimum jail standards set forth in the Louisiana Administrative Code.  Specifically, he stated that the code provides that new and renovated holding cells are to house no more than eight inmates with a minimum of thirty square feet of floor space per person.  He conceded that he did not know whether the holding cells at the St. Tammany Parish Jail qualified as "new and renovated" under the code, but he noted that they are located in a new section of the jail.  He further stated that the code provides that inmates are to be housed in the holding cells for no more than forty-eight hours before being classified and transferred to regular housing.

He testified that each holding cell had only one toilet/sink combination.  He further stated that no fresh drinking water was available in the holding cells other than the water that barely dribbled from a mold-covered water fountain or faucet.  At meals, the only options for drinks were strong Kool-Aid or milk.

He further testified that inmates had to sleep directly on the concrete floor without a mattress.

Subsequent to the Spears hearing, plaintiff amended his complaint in the following respects:

• Plaintiff advised the Court that he had attempted to resolve this matter in the state courts; however, he was unable to pay the required filing fees.[3]

_____

[2] After fifteen days, he was transferred to the general population.
[3] Rec. Doc. 20, p. 1; Rec. Doc. 22.

- After the <u>Spears</u> hearing, plaintiff learned that jail officials allowed the inmates in the holding cells outside for a thirty-minute "yard call."[4]

- On August 4, 2017, the kiosk in the general population area was out of order. When it resumed operating, the law library function would not work. Plaintiff alleged that this was a form of retaliation for his lawsuit.[5]

- After the <u>Spears</u> hearing, plaintiff was diagnosed with diabetes, a condition he attributes to the fact that he had to lay on the concrete floor of the holding cells. He also suffers from kidney pain and a "'possible' enlarged pancreas."[6]

- After being transferred from the St. Tammany Parish Jail, plaintiff was diagnosed with a "gastrointestinal bacterial infection," a condition he attributes to unsanitary conditions he experienced at the St. Tammany Parish Jail.[7]

### I. Screening Standards

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[8] Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

---

[4] Rec. Doc. 20, p. 2.
[5] Rec. Doc. 21, p. 1.
[6] Rec. Doc. 23.
[7] Rec. Doc. 24.
[8] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

3

> (2)     seeks monetary relief from a defendant who is immune from such
>          relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)     is frivolous or malicious;
> (ii)    fails to state a claim on which relief may be granted; or
> (iii)   seeks monetary relief against a defendant who is immune from such
>          relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches

4

<u>Litigation</u>, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).

The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

## **II.  Plaintiff's Claims**

In this lawsuit, plaintiff asserted various federal civil rights claims pursuant to 42 U.S.C. § 1983.  In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.

However, for the following reasons, even if plaintiff's § 1983 complaint is broadly construed,[9] it should be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

## **A.  Conditions of Confinement**

As noted, plaintiff claimed that he was subjected to unconstitutional physical conditions of confinement for the fifteen days he was housed in the holding cells when he initially entered the

---

[9] The Court must liberally construe a *pro se* civil rights complaint.  See <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994).

St. Tammany Parish Jail.  It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted).  Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences.  Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees.  Bell v. Wolfish, 441 U.S. 520, 539 n.21 (1979); Ruiz v. El Paso Processing Center, 299 Fed. App'x 369, 371 (5th Cir. 2008); Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015).  For the following reasons, it is apparent that the physical conditions at the jail alleged by plaintiff, while unpleasant, concern nothing more than *de minimis* inconveniences which do not constitute "punishment" or otherwise rise to the level of constitutional violations.

Plaintiff first claimed that the holding cells at the St. Tammany Parish Jail failed to comply with the minimum jail standards set forth in the Louisiana Administrate Code.  Specifically, he pointed to La. Admin. Code tit. 22, § 3301(H), which provides:  "New and renovated holding cells shall house no more than eight inmates and provide a minimum of 30 square feet of floor space per person."  However, whether the St. Tammany Parish Jail was in compliance with the provisions of the Louisiana Administrative Code is an issue this Court need not and does not reach.  To be entitled to relief under § 1983, a plaintiff must be able to show that there was a violation of *federal* law, and it is clear that a violation of a state administrative code is not, in and of itself, a basis for federal relief.  See, e.g., Tweedy v. Boggs, No. 92-1281, 1993 WL 4507, at *1 n.1 (5th Cir. Jan.

5, 1993); <u>Mathews v. Bowie County, Texas</u>, Civ. Action No. 5:12cv82, 2013 WL 5142381, at *13 (E.D. Tex. Sept. 13, 2013).

Further, the overcrowded conditions plaintiff described, even if accurate, did not rise to the level of a federal constitutional violation.  Plaintiff did not contend that the overcrowding was imposed as a form of punishment, and "it has been repeatedly held that, absent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment." <u>Chavera v. Allison</u>, No. 1:08cv256, 2009 WL 1011157, at *5 (S.D. Miss. Apr. 15, 2009); <u>accord</u> <u>Williams v. Gusman</u>, Civ. Action No. 15-96, 2015 WL 5970424, at *4 (E.D. La. Oct. 14, 2015); <u>Maddox v. Gusman</u>, Civ. Action No. 14-2435, 2015 WL 1274081, at *4 (E.D. La. Mar. 19, 2015); <u>Kelly v. Gusman</u>, Civ. Action No. 07-611, 2007 WL 2007992, at *3 (E.D. La. July 5, 2007) ("The mere fact that plaintiff was confined in an overcrowded cell does not in and of itself amount to a constitutional deprivation.").

Plaintiff also voiced other general complaints about the holding cells, such as the fact that they were unsanitary, the only available drinking water in the cells dribbled from a mold-covered water fountain or faucet, and inmates were required to sleep on the cell floors.  However, again, there was no suggestion that those conditions stemmed from a punitive motive and there is no basis for this Court to infer such a motive.

Moreover, while those conditions may well have been unpleasant, such unpleasantness does not necessarily mean that the conditions were unconstitutional.  Simply put, "the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  <u>Talib v. Gilley</u>, 138 F.3d 211, 215 (5th Cir. 1998).  Additionally, although a jail should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from

potential hazards as one's home might be."  McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009).  The conditions plaintiff described fall far short of the types of conditions which have been considered so egregiously offensive as to violate constitutional minimum standards.  See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional).[10]

Additionally, the United States Supreme Court has noted "that the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.  A filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months." Hutto v. Finney, 437 U.S. 678, 686-87 (1978); accord Alexander v. Tippah County, Mississippi, 351 F.3d 626, 631 (5th Cir. 2003) ("[T]he length of time spent in the offensive conditions should be taken into account.").  In the instant case, plaintiff's exposure to the foregoing conditions was brief, in that he was confined in the holding cells for only *fifteen days* before being transferred into the general population.  Such a short period of time in conditions such as those described here is insufficient to rise to the level of a constitutional violation.    See, e.g., Kelly v. Gusman, Civ.

---

[10] For example, although plaintiff mentioned that mold was present on the water fountain, the mere presence of such mold does not render an inmate's confinement unconstitutional.  See, e.g., Simmons v. Gusman, Civ. Action No. 14-1907, 2015 WL 151113, at *4 (E.D. La. Jan. 12, 2015) ("[T]he mere fact that fungus, mold, mildew, and rust are present [in a jail] does not warrant relief."); Eaton v. Magee, Civ. Action No. 2:10-cv-112, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); Barnett v. Shaw, No. 3:11-CV-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), adopted, 2011 WL 2214383 (N.D. Tex. June 7, 2011); Reynolds v. Newcomer, Civ. Action No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (plaintiff's complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").

Action No. 07-611, 2007 WL 2007992, at *3 (E.D. La. July 5, 2007) (finding that twelve days in overcrowded, unpleasant, and unsanitary conditions was too brief a period to support a constitutional claim).  Likewise, although plaintiff also had no mattress during that fifteen-day period, similarly brief periods of time without a mattress have been found to be constitutional.  See, e.g., McClay v. Gusman, Civ. Action No. 11-2863, 2012 WL 3438367, at *8 (E.D. La. July 13, 2012) (seventeen days without a mattress), adopted, 2012 WL 3481899 (E.D. La. Aug. 14, 2012); Magee v. Crowe, Civ. Action No. 09-3142, 2010 WL 630011, at *9-10 (E.D. La. Feb. 19, 2010) (ten days); Desroche v. Strain, 507 F. Supp. 2d 571, 580-81 (E.D. La. 2007) (ten days), appeal dismissed, 291 Fed. App'x 569 (5th Cir. 2008).

Lastly, plaintiff noted that La. Admin. Code tit. 22, § 3301(F), provides:  "New arrivals may be housed in individual intake holding cells for a maximum of 48 hours before being classified and transferred to an appropriate housing area."  Although plaintiff was housed in the holding cells for fifteen days, there is no indication that plaintiff was kept in the holding cells for the extended period as a form of punishment (as opposed to some other permissible explanation, such as a lack of space in the general population area).  Moreover, in any event, that action was a violation of only state administrative standards, not federal law – and, as such, it cannot serve as a basis for a federal civil rights claim.

### B.  Retaliation/Inaccessible Kiosk Functions

In this third amended complaint, plaintiff added the following claim:

> On August 4, 2017 (a.m.), the kiosk in the general population living area went out of order until August 7, 2017 around 6 p.m.
> When the kiosk started operating again, the law library on the kiosk would not work, and, it still does not work.  When any inmate clicks on to the law library the screen shows –

"Forbidden 403 – Access Denied"
"Cannot be accessed using the credential you have."

This is a "blatant" form of retaliation on the defendants part because of the civil suit plaintiff has filed against them.  There are to be no form(s) of retaliation against the plaintiff by the defendants.[11]

With respect to such retaliation claims, the United States Fifth Circuit Court of Appeals has held:

It is well established that prison officials may not retaliate against an inmate because that inmate exercised his right of access to the courts.  To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.  Causation requires a showing that but for the retaliatory motive the complained of incident would not have occurred.

McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998) (citation, internal quotation marks, and ellipsis omitted).

That said, "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties," and so retaliation claims must be "regarded with skepticism."  Woods, 60 F.3d at 1166 (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)).  Therefore, "trial courts must carefully scrutinize these claims."  See id.  To that end, courts require that inmates claiming retaliation either (1) produce direct evidence of retaliatory motivation or (2) allege a chronology of events from which retaliation may plausibly be inferred.  Id.

Here, even if the Court were to assume that the kiosk's law library function was disabled (as opposed to simply malfunctioning), plaintiff has no *direct evidence* that the defendants disabled

---

[11] Rec. Doc. 21, p. 1.

the function in order to retaliate against *him* for exercising his constitutional rights.[12]   Instead, plaintiff's claim is apparently based on his personal subjective belief that the action was motivated by a retaliatory motive.  Although it is obviously possible that the action was retaliatory based on plaintiff's litigation efforts, the mere fact that it is *possible* to infer a retaliatory motive from a chronology of events does not suffice.  Rather, again, plaintiff's claim is actionable only if it is *plausible* to infer a retaliatory motive based on the sequence of events.  In the instant case, the Court simply cannot say that plaintiff's allegations cross the line from possibility to plausibility for the following reasons.

First, courts have routinely rejected the contention that the mere existence of prior lawsuits against law enforcement officials is in and of itself sufficient to constitute a chronology of events from which one can infer a retaliatory motive for a subsequent adverse action.  See, e.g., Armenta v. Chapman, 371 Fed. App'x 452, 456 (5th Cir. 2010); Norman v. Prince, Civ. Action No. 10-0605, 2011 WL 6369977, at *6 (M.D. La. Nov. 3, 2011), adopted, 2011 WL 6369840 (M.D. La. Dec. 19, 2011); Allen v. Holden, Civ. Action No. 10-753, 2011 WL 4737416, at *6-7 (M.D. La. Aug. 29, 2011), adopted, 2011 WL 4729831 (M.D. La. Oct. 5, 2011); Thunderhorse v. Pierce, 418 F. Supp. 2d 875, 898-99 (E.D. Tex. 2006) ("In this case, Thunderhorse simply alleges that events not to his liking have occurred recently, and concludes that these must have been the result of retaliation. He does not offer a chronology of events from which retaliation may plausibly be inferred; his contention that his past legal battles with TDCJ-CID have led to the implementation of policies which he considers unfavorable is simply too tenuous to support a claim of retaliation. Inmates cannot bring legal action against TDCJ and then forever after claim that any adverse

---

[12] The Court notes that plaintiff alleged that the function was not working for *any* inmate, not just plaintiff.

actions by prison officials were necessarily motivated by retaliatory intent from the prior legal action."), aff'd in part, vacated in part on other grounds, 232 Fed. App'x 425 (5th Cir. 2007).

Second, *even if* the defendants were aware of the lawsuit,[13] one cannot reasonably infer that the lawsuits left them in such a fit of pique that they would resort to unlawful retaliation. On the contrary, penal officials are routinely sued by disgruntled inmates who feel that they have been treated unfairly – such lawsuits simply come with the job. Of course, "it is conceivable that a *particular* lawsuit might anger an official, such as if the lawsuit required substantial resources to defend or resulted in liability or public condemnation …." Spikes v. Seal, Civ. Action No. 16-2794, 2016 WL 8469636, at *4 (E.D. La. Nov. 23, 2016), adopted, 2017 WL 959392 (E.D. La. Mar. 13, 2017). However, that cannot be plausibly inferred here. As noted, this lawsuit is still being screened, and so no action was required by the defendants to defend against it and there has been no judicial finding adverse to them. Accordingly there is no reason whatsoever to infer that this lawsuit motivated the defendants to disable the kiosk's law library function.

In summary, plaintiff's retaliation claim is actionable *only if* the defendants were motivated by a desire to punish plaintiff for *exercising a specific constitutional right*. Here, plaintiff has produced no direct evidence of such a motivation, and a retaliatory motive cannot be inferred merely from the fact that plaintiff filed this lawsuit. Rather, plaintiff's allegation of a retaliatory motive in this case is wholly speculative and conclusory, and it therefore does not suffice to survive the screening process mandated by federal law. See Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988) (dismissing as frivolous conclusory allegations that a prison official's action was taken in

---

[13] The Court notes that the defendants have not yet been served with the lawsuit, in that it is still in the screening process. However, the defendants may nevertheless be aware of the lawsuit's existence, in light of the fact that the Warden was required to make plaintiff available for the Spears hearing in the case.

retaliation for the prisoner's prior complaints); see also Moore v. Thaler, 436 Fed. App'x 311, 312 (5th Cir. 2011) (holding that a prisoner's "conclusional allegations, based solely on his personal beliefs, were not sufficient to support a valid constitutional claim for ... retaliation").

Lastly, the Court notes that, absent a retaliatory motive, the mere fact that the kiosk's law library function stopped working is not alone sufficient to support a constitutional claim for the following reasons.

It is true that inmates have a constitutional right of meaningful access to the courts which "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977).  The right extends to pretrial detainees.  See United States v. Moya-Gomez, 860 F.2d 706, 743 (7th Cir. 1988); Wetzel v. Strain, Civ. Action No. 09-7048, 2010 WL 744993, at *3 (E.D. La. Feb. 26, 2010); Kirkpatrick v. Daugherty, Civil Action No. 6:05cv461, 2006 WL 2401108, at *4 (E.D. Tex. Aug. 17, 2006).

In the instant case, however, plaintiff did not specify *why* he wanted access to law library function.  If he wanted to use it in connection with his criminal case, his claim necessarily fails because was appointed a public defender, James Flammang, to assist him in that matter.[14]  That appointment fully satisfied plaintiff's right of access to courts; in light of the appointment, no independent access to a law library or effective jail legal services program was constitutionally required.  See, e.g., Dickinson v. TX, Fort Bend County, 325 Fed. App'x 389, 390 (5th Cir. 2009) ("Because Dickinson had court-appointed counsel to represent him, he did not have a constitutional right of access to a law library to prepare his criminal defense."); Ashcraft v.

---

[14] See Rec. Doc. 9, p. 5.

Cameron County, No. 97-41219, 1998 WL 611201, at *3 (5th Cir. Aug. 17, 1998) ("A criminal

defendant cannot complain that he was denied access to the courts while represented by counsel.");

Ford v. Foti, No. 94-30614, 1995 WL 241811, at *3 (5th Cir. Apr. 14, 1995) ("A criminal

defendant who is represented by counsel has meaningful access to the courts vis-a-vis the criminal

action pending against him."); Childs v. Scott, No. 94-60723, 1995 WL 153057 (5th Cir. Mar. 22,

1995) ("If a criminal defendant is represented by counsel, he has constitutionally sufficient access

to the courts."); Webb v. Havins, No. 93-1452, 1994 WL 286151, at *3 (5th Cir. June 13, 1994);

Crockett v. Carpenter, No. 93-1480, 1994 WL 144645, at *3 (5th Cir. Apr. 5, 1994).

On the other hand, if plaintiff wanted to use the law library function in connection with his

civil litigation, his claim is cognizable only if the deprivation actually resulted in prejudice to him

in that litigation.  See, e.g., Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999) ("[A]n inmate

alleging denial of access to the courts must demonstrate an actual injury stemming from

defendants' unconstitutional conduct."); Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998);

McDonald v. Steward, 132 F.3d 225, 230-31 (5th Cir. 1998) ("[B]efore a prisoner may prevail on

a claim that his constitutional right of access to the courts was violated, he must demonstrate that

his position as a litigant was prejudiced by his denial of access to the courts." (quotation marks

omitted)); Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993).  In the instant case,

plaintiff does not allege that he has suffered any actual prejudice whatsoever as a result of the

kiosk's non-working law library function.  He certainly was not prejudiced with respect to the

instant case, which he has litigated competently and zealously.  Further, although he encountered

difficulties in pursuing his lawsuit in the state courts, those difficulties resulted from his not paying

the filing fee – *not* as the result of his inability to conduct legal research on the kiosk.[15]  Because plaintiff "has not alleged that he was actually denied access to the court or that any pending litigation was prejudiced, ... [he] therefore has not stated a cognizable § 1983 claim."  Clark v. Foti, No. 94-30615, 1995 WL 136127, at *2 (5th Cir. Mar. 8, 1995).

For these reasons, his retaliation and access to courts claims should be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this second day of January, 2018.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[15] See Rec. Docs. 20 and 22.

15